FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUL 12 PM 1:41

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTHONY THOMPSON            CIVIL ACTION

versus            NO. 05-3329

STATE OF LOUISIANA THROUGH            SECTION "C"
THE DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS and WARDEN
JAMES D. MILLER

## ORDER AND REASONS

Before the Court are motions (Rec. Doc. 11 and 44)[1] filed by the State of Louisiana ("Defendant") to dismiss various claims filed by Plaintiff Anthony Thompson ("Plaintiff" or "Plaintiff Thompson"). Plaintiff Thompson, through his original and amended complaints, has asserted claims against various defendants under the following four causes of action: 42 U.S.C. §1983, 42 U.S.C. §1981, 42 U.S.C. §2000e (Title VII), and La.R.S. 23:332. Having considered the record, the parties' respective briefs and arguments adduced at an oral hearing held on July 5, 2006, and the law, the Court finds the Defendant's motion is **GRANTED** in part and **DENIED** in part.

Plaintiff has named two defendants in this suit: The Louisiana Department of Public Safety and Corrections ("DPSC") and Warden James Miller ("Warden Miller" or "Miller"), who is sued in both his official and individual capacity. (Rec. Doc. 11, Complaint, p. 2; Rec. Doc. 24, Motion and Order for Leave to Amend, p.1). Plaintiff

---

[1] The various challenges lodged by the Defendant are raised in both Rec. Doc. 11 and Rec. Doc. 44. Accordingly, this order disposes of both motions.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep____
___ Doc. No_____

1

alleges numerous constitutional violations that give rise to his claims under the various Civil Rights statutes listed in his complaint. Specifically, Plaintiff, an African-American male, asserts that he was hired into a lower job status than similarly situated white employees. He claims that, while employed, he filed a grievance regarding Defendant's hiring practices for which he was subsequently retaliated against in various ways by his immediate supervisors, Lieutenant Smith ("Smith") and Captain Todd ("Todd"), both of whom are white. Part of the retaliation, according to Plaintiff, was getting fired from his job. Plaintiff asserts that his termination was purportedly based on the accusation that he falsified a log book, which he claims was a pretextual reason for his firing. (Rec. Doc. 1, Complaint, p. 3-5). Although Plaintiff never refers to specific actions taken by Warden Miller, he claims that Miller "ratified and endorsed the actions of Todd and Smith and carried out the retaliatory action initiated by Todd and Smith." (Rec. Doc. 57, Plaintiff's First Amended Complaint, p. 2).

In considering a motion to dismiss, the court liberally construes the complaint in favor of the plaintiff assuming all pleaded facts as true. Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996). The Court notes that the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

Defendants move to dismiss each of Plaintiff's claims on various grounds discussed below. Defendants' arguments are considered in the context of each particular cause of action.

I. <u>42 U.S.C. §1983 Claims</u>:

Defendants have challenged Plaintiff's §1983 claims on the following six grounds:

    1.) Sovereign Immunity bars this suit against DPSC and Warden Miller in his official capacity (Rec. Doc. 11, Motion to Dismiss, p. 3);

    2.) Plaintiff's §1983 and §1981 claims are superseded by Title VII (Rec. Doc. 11, Motion to Dismiss, p. 9);

    3.) Plaintiff has failed to state a claim upon which relief may be granted because there is no allegation of personal wrongdoing on the part of the DPSC or the Warden and there is no liability under §1983 based on *respondeat superior* (Rec. Doc. 11, Motion to Dismiss, p. 5);

    4.) Plaintiff has failed to state a claim upon which relief can be granted because complaint fails to "allege with specificity that defendant or defendants acted intentionally, deliberately or with callous and reckless disregard to his constitutional rights." (Rec. Doc. 11, Motion to Dismiss, p. 12); and

    5.) Plaintiff's <u>Monell</u> claim fails to identify any specific discriminatory custom or policy (Rec. Doc. 11, Motion to Dismiss, p. 6).

The Court considers each of these arguments in turn.

    1.) <u>Sovereign Immunity bars this suit against DPSC and Warden Miller in his official capacity</u>

As Plaintiff Thompson concedes, Defendants are correct for reasons stated in their briefs that both the DPSC and Warden Miller in his official capacity are protected by sovereign immunity against suits for money damages under §1983. Unlike Title VII,

3

§1983 does not abrogate sovereign immunity, see Quern v. Jordan, 440 U.S. 332 (1979), and suits against government officials acting in their official capacity are considered to be suits against the entity of which they are agents. See Kentucky v. Graham, 105 S.Ct. 3099 (1985). All of Plaintiff's §1983 claims for money damages against the DPSC or Warden Miller in his official capacity are hereby **DISMISSED**.[2]

### 2.) Plaintiff's §1983 and §1981 claims are superseded by Title VII

Defendants argue that Plaintiff's §1981 and §1983 claims are superseded by Title VII and should therefore be dismissed. Defendants are partially correct. In the Fifth Circuit, Title VII is the "exclusive means by which an employee may pursue a discrimination claim." Jackson v. City of Atlanta, Tx., 73 F.3d 60 (5th Cir. 1996). Plaintiff may not seek relief under §1981 or §1983 for any claims for which Title VII affords a remedy. Id. Accordingly, all of Plaintiff's §1983 claims that allege some form of employment race discrimination or retaliation, as well as his §1981 claim, are hereby **DISMISSED**. However, in addition to race discrimination claims, Plaintiff asserts §1983 claims that arise out of constitutional violations that have no relation to Title VII discrimination; namely, he alleges Due Process violations for which he seeks redress under §1983. (Rec. Doc. 1, Complaint, p. 9). Those claims are not affected by Plaintiff's Title VII claims. Defendants' motion to dismiss is therefore **DENIED** with respect to those claims.

---

[2] Plaintiff's Monell claim survives this particular challenge since sovereign immunity does not protect municipal governments from being sued for their own unconstitutional or illegal policies. Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). However, as is discussed in the following section, Plaintiff's Monell claims are dismissed on other grounds.

In the Fifth Circuit,[3] "allegations of discriminatory treatment in connection with public employment that form the basis of a Title VII claim cannot form the basis of a second, separate claim under §1983 as well." Jackson, 73 F.3d at 63. The same is true for §1981 claims. See Page v. United States Indus., Inc., 726 F.2d 1038, 1041 n. 2 (5th Cir.1984). Jackson involved an African-American Fire Chief in Atlanta, Wilfred Jackson ("Jackson"), who claimed he was fired from his position because of his race. Jackson, 73 F.3d at 61. Jackson sued the City of Atlanta along with various city officials asserting claims of discrimination under both Title VII and §1983. Id. It was undisputed that "these two federal claims [arose] out of identical fact situations and identical allegations of racial discrimination." Id. The Court held, "Jackson's putative §1983 claims, arising as they do from precisely the same allegedly discriminatory acts as do his Title VII claims, should have been dismissed." Id. at 63. In the instant case, the Court finds, and Plaintiff does not dispute,[4] that Plaintiff's §1983 race discrimination claims were born out of the same fact situations that gave rise to his Title VII claims, and that the allegations are identical under each cause of action. Accordingly, all of Plaintiff's §1983 and §1981 claims that allege race discrimination are **DISMISSED**.

Title VII does not supersede Plaintiff's §1983 claims that arise from alleged Due Process violations, however, and those claims thus survive dismissal. In Johnston v.

---

[3] Some perceive a tension in the relationship between §1983 and Title VII in the Fifth Circuit. Courts and commentators alike have referred to an "intra-circuit" split in this area of law. See, e.g., Rhyce v. Martin, 173 F.Supp.2d 521, 530 (E.D.La. 2001) ("Defendants first argument [regarding the relationship between Title VII and §1983] places the Court squarely in the middle of a nettlesome intra-circuit split."); Michele W. Homsey, Employment Discrimination in the Public Sector: The Implied Repeal of Section 1983 by Title VII, 15 LAB. LAW. 509, 542 (Winter/Spring 2000) (noting "Since Jackson has not been overruled, it is difficult to forecast how a plaintiff with overlapping claims might fare in the Fifth Circuit, further illustrating the need for the Supreme Court to resolve both intra- and inter-circuit conflicts.").

[4] Plaintiff was given multiple opportunities to address Defendants' arguments on this point and each time neglected to do so. The Court in fact ordered supplemental briefing from Plaintiff's counsel warning counsel that any arguments not addressed would be deemed as unopposed by the Court. (Rec. Doc. 48). The Court therefore construes Plaintiff's silence as a concession on this point.

Harris County Flood Control Dist., 869 F.2d 1565 (5th Cir. 1989), the Court considered the relationship between §1983 and Title VII in the context of a public employee who was allegedly fired in retaliation for testimony the employee gave against his employer at a co-worker's Equal Employment Opportunity ("EEO") hearing. Johnston, 869 F.2d at 1568. The employee sued the agency and various officers under both Title VII and §1983. As in Jackson, the same *factual* scenario gave rise to both the Title VII and §1983 claims in Johnston. Unlike in Jackson, however, the Title VII and §1983 claims in Johnston were predicated on different alleged *constitutional violations*. The Johnston plaintiff's §1983 claim alleged that the retaliation he suffered based on his testimony at the EEO hearing violated his First Amendment rights, a claim clearly outside the bounds of the remedial scheme created by Title VII. The Johnston Court found this to be a significant distinction, noting, "Although Title VII supplements and overlaps §1983, it remains an exclusive remedy when a state or local employer violates only Title VII. When, however, unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. At this point, §1983 and Title VII overlap, providing supplemental remedies." Id. at 1576. In keeping with Johnston, Defendant's motion to dismiss Plaintiff Thompson's §1983 Due Process claims is **DENIED**.

3.) Plaintiff has failed to state a claim upon which relief may be granted under §1983 because there is no allegation of personal wrongdoing on the part of the DPSC or the Warden and there is no liability under §1983 based on *respondeat superior*

The only §1983 claim that survives this motion to dismiss is Plaintiff's Due Process claims for money damages against Warden Miller in his individual capacity.

6

Without discussing Plaintiff's Due process claim specifically, Defendants argue that Plaintiff has failed to allege sufficient facts of personal involvement by Warden Miller to hold him personally responsible under §1983. The Court disagrees. At this early stage in the litigation, Plaintiff has alleged enough to go forward on his §1983 Due Process claim.

"Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story." Fowler v. Smith, 68 F.3d 124, 127 (5th Cir. 1995). "The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond." Finch v. Fort Bend Independent School Dist., 333 F.3d 555, 562 (5th Cir. 2003). "The fundamental requirement... is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Public officials violate... due process rights if they act arbitrarily or capriciously." Finch, 333 F.3d at 562-63.

Plaintiff specifically alleges a property right in his employment, which defendants do not contest. (Rec. Doc. 1, Complaint, p. 8-9). He further maintains that his termination was effected "without a pre-deprivation hearing, and without offering or conducting a sufficiently prompt post-deprivation hearing." Id. at 9. Furthermore, in his Amended Complaint, Plaintiff alleges that "Warden James D. Miller . . . is vested with the sole authority to discipline employees. . ." (Rec. Doc. 24, Motion and Order for Leave to Amend, p. 2). The Court agrees that Plaintiff's pleadings contain little that demonstrates personal responsibility by Warden Miller and that such will ultimately be necessary to impose liability under §1983. But those considerations are

more appropriate on a motion for summary judgment, not a motion to dismiss, particularly where, as here, some of the factual predicate needed by Plaintiff may only be revealed through discovery. The Court **DENIES** Defendants arguments on this point at this early stage in the litigation.

    4.) <u>Plaintiff has failed to state a claim upon which relief can be granted because complaint fails to "allege with specificity that defendant or defendants acted intentionally, deliberately or with callous and reckless disregard to his constitutional rights." (Rec. Doc. 11, Motion to Dismiss, p. 12):</u>

For the same reasons stated in the previous section, this argument is **DENIED**.

    5.) <u>Plaintiff's Monell claim fails to identify any specific discriminatory custom or policy</u>

At oral argument, the Court noted that Plaintiff would be given 10 days to amend his complaint to properly state a <u>Monell</u> claim, pending the ruling on the issue of whether Title VII supersedes §1983, which was taken under advisement. In light of the Court's above ruling that Title VII does in fact supersede Plaintiff's §1983 claims, including his <u>Monell</u> claim, this issue is **MOOT**.

Because Plaintiff's <u>Monell</u> claim is **DISMISSED,** amending his complaint to properly state a <u>Monell</u> claim would be futile.

II. <u>42 U.S.C. §2000e (Title VII) Claims</u>[5]:

---

[5] Plaintiff also raised identical claims under La.R.S. 23:332, a virtually identical state analogue to Title VII. Because Louisiana courts look to interpretations of federal statutes for guidance on construing Louisiana anti-discrimination statutes, the Court's rulings regarding Title VII apply equally to Defendant's challenges to La.R.S. 23:332.

Plaintiff alleges various claims under Title VII against the DPSC. Plaintiff's complaint specifically references 42 U.S.C. § 2000e-2(a)(1) and (2).[6] Plaintiff's complaint also appears to make out a retaliation claim under 42 U.S.C. 2000e-3(a)[7] although that provision is never specifically mentioned in his pleadings. As discussed at oral argument, Plaintiff is given until July 21, 2006 to amend his complaint to specifically allege a retaliation claim under 42 U.S.C. 2000e-3(a).

Defendants challenge Plaintiff's Title VII claims on the following grounds:

1.) Plaintiff has failed to alleged he suffered an "adverse employment action" (Rec. Doc. 11, p. 7)
2.) There is no individual liability under Title VII and La.R.S. 23:332 (Rec. Doc. 11, p. 13)
3.) Plaintiff's grievances were not protected activity (Rec. Doc. 11, p. 14)

Each claim is considered below.

1.) <u>Plaintiff has failed to allege he suffered an "adverse employment action"</u>

---

[6] Those sections provide:

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

[7] 42 U.S.C 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

9

Defendants argue that the harms Plaintiff claims he suffered other than his termination – being yelled at in front of other employees and inmates and having his desk searched – do not constitute "adverse employment actions." (Rec. Doc. 11, p. 8).

The recent Supreme Court decision in <u>Burlington Northern & Santa Fe Railway Co. v. White</u> (decided on June 22, 2006, after all the pleadings in this case were received by the court) appears to have changed the legal landscape with regard to Title VII retaliation claims and "adverse employment actions" in particular. The parties are each given until July 21, 2006, to submit additional briefing on this issue directed specifically to the question of how <u>Burlington</u> affects the Court's analysis of this question.

2.) <u>There is no individual liability under Title VII and La.R.S. 23:332</u>

Plaintiff does not appear to have sued any individuals under either Title VII or La. R.S. 23:332 so the State's argument is **DENIED**.

3.) <u>Plaintiff's grievances were not protected activity</u>

Defendants contend that Plaintiff's grievances were not protected activity under Title VII. It appears the Defendants are making two claims. First, it seems to believe that the *type* of the Plaintiff's grievance does not entitle him to protection from retaliation. That is, the State is contending that the grievance filed by Plaintiff – for which he was allegedly retaliated against – was not a "Title VII proceeding" but instead

was some less formal internal complaint. That distinction, argues the State, entitles the Plaintiff to less protection from retaliation. Second, the State appears to claim that the *content* of Plaintiff's complaint warrants less protection under Title VII. That is, the State asserts that Plaintiff's grievance alleged unconstitutional behavior by Todd and Smith, not the DPSC itself, which is not protected under Title VII according to the State. The State's arguments are **DENIED**.

The State's claims are built on unwarranted assumptions and erroneous conclusions. First, the Plaintiff's complaint does not specify what type of grievance Plaintiff filed; rather, it merely states he filed a "grievance." (Rec. Doc. 1, p. 4). It is unclear whether this was a Title VII proceeding, which would entitle the Plaintiff to nearly absolute protection. Second, although the complaint is admittedly somewhat confounding, it appears that Plaintiff's initial grievances were challenging the "racially discriminatory hiring and promotion practices" (Rec. Doc. 1, p. 4), which is a complaint against the DPSC itself, not against Todd and Smith, as the State contends. It is not clear that a grievance was ever in fact filed against Todd and Smith. See (Rec. Doc. 1, p. 4).

Even if one assumes that Plaintiff's complaint was not a Title VII proceeding, he has still alleged enough at this point to go forward. Two elements determine whether opposition behavior such as Plaintiff's grievance is protected by Title VII. First, plaintiff's behavior must be in opposition to a practice that a reasonable person would find discriminatory. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001). Plaintiff has raised sufficient allegations of racially discriminatory hiring practices to satisfy this test at this stage. Second, Plaintiff's behavior in opposing the allegedly discriminatory behavior must not "be so inappropriate as to justify the curtailment of

statutorily-afforded safeguards," Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 373 (5th Cir.1998), as "some conduct, even if in sincere opposition to unlawful employment practices under Title VII, may be so disruptive or inappropriate as to fall outside the [statute's] protections," Jones v. Flagship Int'l, 793 F.2d 714, 728 (5th Cir.1986). Defendants have not alleged that Plaintiff's conduct in opposing the allegedly discriminatory hiring practices was in any way disruptive or inappropriate. This argument is without merit.

Defendant's motion to dismiss Plaintiff's Title VII and La.R.S. 23:332 claims is **DENIED**.

III. 42 U.S.C. §1981 Claims:

Defendants challenge Plaintiff's §1981 claims on various grounds. The Court has found that Plaintiff's §1981 claims are superseded by Title VII and they are thus **DISMISSED.**

IV. Miscellaneous claims:

Defendants challenge Plaintiff's complaint on the following three grounds unrelated to any one particular cause of action:

1.) Plaintiff may not recover for mental anguish and emotional distress (Rec. Doc. 11, p. 12);
2.) Plaintiff is not entitled to the injunctive relief he is seeking (Rec. Doc. 11, p. 15); and

3.) Punitive damages are unavailable against the state (Rec. Doc. 11, p. 22)

Each claim is considered below.

### 1.) Plaintiff may not recover for mental anguish and emotional distress

Defendants argue that Plaintiff may not recover for mental anguish or emotional distress suffered by Thompson as a result of his termination. (Rec. Doc. 11, p. 12). Defendants are simply wrong and do not cite a single case that actually states such a proposition. Quoting from The Civil Rights Act of 1991, which creates a right to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964, the Supreme Court explained in Landgraf v. USI Film Products 511 U.S. 244 (1994): "Under §102 . . . a Title VII plaintiff who wins a backpay award may also seek compensatory damages for "future pecuniary losses, *emotional pain*, suffering, inconvenience, *mental anguish*, loss of enjoyment of life, and other nonpecuniary losses." 511 U.S. at 1491 (emphasis added). The Defendants' argument is **DENIED**.

### 2.) Plaintiff is not entitled to the injunctive relief he is seeking

Defendants are correct for the reasons stated in their motion that Plaintiff lacks Article III standing to assert claims for injunctive relief. Accordingly, each of his claims for injunctive relief is **DISMISSED**.

13

The Supreme Court established conclusively in City of Los Angeles v. Lyons, 461 U.S. 95 (1983), that in order for someone to have standing to seek an injunction, the person must allege a substantial likelihood that he or she will be subjected in the future to the allegedly illegal conduct. See also, Brown v. Edwards, 721 F.2d 1442 (5th Cir. 1984). In Lyons, the Supreme Court held that the plaintiff could not seek injunctive relief prohibiting Los Angeles police officers from utilizing a "chokehold" maneuver because there was no real and immediate threat the plaintiff would be arrested in the future. The Supreme Court has subsequently emphasized that "'some day' intentions-without any description of concrete plans, or indeed even any specification of *when* the some day will be" are insufficient to support a finding of the kind of injury required to warrant injunctive relief. Lujan v. Defenders of Wildlife, 112 S.Ct. 2130 (1992); see also Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211 (1995).

Since Lyons, lower courts have dismissed a wide array of suits seeking forward-looking relief from allegedly unconstitutional behavior. See, e.g., Brown, 721 F.2d 1442 (5th Cir. 1984)(upholding dismissal of §1983 claim attacking system which compensated constables ten dollars for each charge which results in a conviction on grounds that plaintiff failed to "establish any real and immediate threat" that he would again be injured by the policy); Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999 (11th Cir. 1997) (holding former employees of motel chain did not have standing to seek injunctive relief because they did not allege they would be discriminated against in the future); Johnson v. Board of Regents of the University of Ga., 263 F.3d 1234 (11th Cir. 2001) (holding former applicants for admission to freshman class at state university, denied admission due to use of unconstitutional admission standards, did not have standing to seek

prospective injunctive relief absent showing of likelihood they would ever again be subjected to freshman admissions process); Shotz v. Cates, 256 F.3d 1077, 1081-82 (11th Cir. 2001) (holding plaintiffs alleging violation of the ADA in a county courthouse do not have standing to seek injunctive relief because they have not alleged an immediate and real threat of future injury, only past incidents of discrimination).

Plaintiff Thompson has failed to allege any conceivable way by which he might be subjected to Defendant's discriminatory policies at any point in the future, and he conceded Defendants' arguments on this point at oral argument. His claims for injunctive relief are therefore **DISMISSED**.

### 3.) Punitive damages are unavailable against the state

Defendants are correct for the reasons stated in their motion (Rec. Doc. 11, p. 22) that punitive damages are unavailable against the State under the statutes that form the basis of Plaintiff's claims. Plaintiff's claims for punitive damages (Rec. Doc. 1, paras. 28, 43, and 47) are thus **DISMISSED**.

### 4.) Warden Miller has qualified immunity from suit

Defendants contend Warden Miller is entitled to qualified immunity and that Plaintiff's pleadings are insufficient to overcome their asserted defense. Defendants' arguments are well-taken; however, as discussed at oral argument, it is premature to issue a ruling on the merits of the issue of qualified immunity. Plaintiff will be permitted

15

discovery limited *solely* to the issue of Warden Miller's qualified immunity from Plaintiff's §1983 Due Process claim. Subject to those limitations, Plaintiff will be allowed 60 days from the issuance of this ruling to depose Todd, Smith and Warden Miller. **IT IS ORDERED** that Plaintiff, at that point, submit a reply under Rule 7 of Federal Rules of Civil Procedure that pleads specific facts sufficient to overcome the qualified immunity defense pursuant to Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). The Supreme Court has recognized that immunity is "an entitlement not to stand trial or face the other burdens of litigation," in addition to a shield from liability. Mitchell v. Forsyth, 472 U.S. 511 (1985). Because the entitlement is an "*immunity from suit* . . .[,] it is effectively lost if a case is erroneously permitted to go to trial." Id. (emphasis in original). As a result, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Saucier v. Katz, 533 U.S. 194 (2001).

The examination of a claim for qualified immunity involves a two-step analysis. First, the Court must inquire whether the plaintiff has alleged the violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 231 (1991). "The second step is to 'decide whether the defendant's conduct was objectively reasonable' in light of legal rules clearly established at the time of the incident." Jones v. City of Jackson, 203 F.3d 875, 879 (5th Cir.2000)(quoting Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir.1993)). Furthermore, the conduct of each defendant must be analyzed separately in

light of the circumstances with which each defendant was confronted. See Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

The Fifth Circuit imposes a somewhat heightened pleading requirement on plaintiffs faced with a qualified immunity defense. The Court noted in Todd v. Hawk, 72 F.3d 443 (5th Cir. 1995), that "we stand by our insistence that complaints plead more than conclusions, and that a plaintiff can, at the pleading stage, be required to engage the affirmative defense of qualified immunity when invoked. . . ." (quoting Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995)). In this case, while Plaintiff Thompson describes the behavior of Smith and Todd (neither of whom are parties to this suit) with some specificity, there is not a single fact regarding Warden Miller by which one could evaluate whether his behavior was objectively reasonable. The *only* discussion of Warden Miller's behavior is the wholly conclusory assertion that "Warden Miller endorsed and ratified the aforementioned discriminatory acts of Lt. Smith and Captain Todd. Todd and Smith possessed leverage or exerted influence over Warden Miller, the titular decision maker." (Rec. Doc. 24, Motion and Order for Leave to Amend, p. 2) Such conclusory allegations are insufficient to meet the heightened pleading requirement in this Circuit.

However, the Fifth Circuit has established a procedure, short of dismissing a case, to undertake in situations where a plaintiff's initial pleadings appear deficient with regard to a qualified immunity defense. As discussed in Schultea, "First, the district court must insist that a plaintiff suing a public official under §1983 file a short and plain statement of

17

his complaint, a statement that rests of more than conclusions alone. Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." Schultea, 47 F.3d at 1433-34. The Schultea Court continued, "Vindicating the immunity doctrine will ordinarily require such a reply, and *a district court's discretion not to do so is narrow indeed* when greater detail might assist. . . . The district court need not allow any discovery unless it finds that plaintiff has supported his claim *with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.*" Id. at 1434 (emphasis added). Furthermore, courts have recognized that it may be necessary, before resolving the question of qualified immunity, to permit discovery limited to the qualified immunity issue in cases where the question of objective reasonableness may turn on facts peculiarly within the knowledge of the defendants. Schultea, 47 F.3d at 1432 (citing Anderson v. Creighton, 483 U.S. 635 (1987). As mentioned at oral argument, the Court finds this to be such a case. Accordingly, Plaintiff has until September 11, 2006, to depose Todd, Smith and Warden Miller to discover facts that could overcome a qualified immunity defense. Plaintiff is then ordered to submit a reply, pursuant to Schultea, delineating those facts to the Court by September 25, 2006. Defendants will have until October 2, 2006 to file any response to Plaintiff's submission, at which point the issue will be taken under advisement.

V. Attorney's Fees:

The Court **DENIES** Defendant's request for attorney's fees at this time.

VI. <u>Summary of dispositions</u>:

I. <u>42 U.S.C. §1983</u>:

    1.) All of Plaintiff's §1983 claims for money damages against the DPSC or Warden Miller in his official capacity are hereby **DISMISSED**.
    2.) All of Plaintiff's §1983 and §1981 claims that allege race discrimination, including Plaintiff's <u>Monell</u> claim, are **DISMISSED**.
        a. Defendant's motion to dismiss Plaintiff Thompson's §1983 Due Process claims is **DENIED**.

II. <u>42 U.S.C. §2000e</u>:

    1.) Plaintiff is given until July 21, 2006 to amend his complaint to specifically allege a retaliation claim under 42 U.S.C. 2000e-3(a).
    2.) Each party is given until July 21, 2006, to submit additional briefing on this issue directed specifically to the question of how <u>Burlington</u> affects the Court's analysis of this question.
    3.) Defendant's motion to dismiss Plaintiff's Title VII and La.R.S. 23:332 claims is **DENIED**.

III. <u>42 U.S.C. §1981</u>:

    1.) Plaintiff's §1981 claims are **DISMISSED**.

IV. <u>Miscellaneous</u>:

    1.) Plaintiff's claims for injunctive relief are **DISMISSED**.
    2.) Plaintiff's claims for punitive damages are **DISMISSED**.
    3.) Plaintiff has until September 11, 2006, to depose Todd, Smith and Warden Miller to discover facts that could overcome a qualified immunity defense. Plaintiff is then ordered to submit a reply, pursuant to <u>Schultea</u>, delineating those facts to the Court by September 25, 2006. Defendants will have until October 2, 2006 to file any response to Plaintiff's submission, at which point the issue will be taken under advisement.

New Orleans, Louisiana, this 11th day of July, 2006.

*[signature]*
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE